UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ASPHALT PAVING SYSTEMS, INC. | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 14-5518 |
| v. | : | MEMORANDUM OPINION & ORDER |
| MARGARET M. GANNON, as personal representative of the estate of Thomas H. Gannon, and RICHARD GANNON, | : | |
| | : | |
| Defendants. | : | |

This matter is before the Court on motion of Defendants to transfer the case to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404(a). The Court considered the submissions of the parties and heard oral argument on the motion on May 13, 2015. For the reasons set forth on the record that day, and those below, Defendants' motion will be denied.

Background

A Second Amended Complaint in this matter was filed in the Superior Court of New Jersey, Law Division, Atlantic County on or about July 2, 2014. It appears to allege fraud in the inducement of a July 1, 2008 Stock Purchase Agreement between the parties. Defendants removed the case to this Court on September 4, 2014 with federal jurisdiction based upon diversity of citizenship.

The facts alleged in the Second Amended Complaint are as follows. Plaintiff Asphalt Paving Systems, Inc. is a New Jersey corporation in the paving business, operating in the Mid-Atlantic States and Florida, with its principal place of business in Hammonton, New Jersey. In the Spring of 2008, Thomas Gannon as President of Thos.

1

H. Gannon & Sons, Inc. ("TGSI"), also a paving business, allegedly made an unsolicited call to Plaintiff during which he proposed that Plaintiff purchase TGSI. Thomas and his brother Richard, both citizens of New York, were each 50% owners of TGSI. During the phone call, Thomas represented that Richard was planning to retire over the next decade, but Thomas would stay on after the sale of TGSI to Plaintiff, slowly and steadily transitioning his customer base "to a groomed successor." (Sec. Am. Compl. ¶ 11.) It appeared that this arrangement would be mutually beneficial, and negotiations for the purchase of TSGI occurred. The parties executed the Stock Purchase Agreement for the sale of TGSI on July 1, 2008 and thereafter closed on the purchase. (Sec. Am. Compl. ¶ 15; Palladino Decl. Ex. A, executed Stock Purchase Agreement.)

Plaintiff stresses that "it was always understood that the driving force behind the purchase was the continuity of relations established by TSGI and, more specifically, Thomas." (Sec. Am. Compl. ¶ 13.) After the sale closed, however, Thomas became ill; he died September 28, 2009. (Sec. Am. Compl. ¶16.)

The Stock Purchase Agreement required the purchase price to be paid over a five year period, corresponding with the term of the Consulting Agreement. (Palladino Decl. Ex. A, ¶2.1-2.2.) Plaintiff made all of the payments required by both the Stock Purchase Agreement and the Consulting Agreement. (Messina Decl. ¶ 5.) As the term of the Consulting Agreement drew to a close, however, Plaintiff learned that Richard allegedly was violating the noncompete provision of the Consulting Agreement by conspiring with TGSI's primary competitor to acquire business for the competitor on Long Island. (Sec. Am. Compl. ¶ 21-24.) Plaintiff undertook an investigation, which included a review of the computers used by Richard and Thomas at the TGSI offices. (Sec. Am. Compl. ¶25.) On one of those computers, Plaintiff allegedly discovered evidence that Thomas had

received a "shocking diagnosis" before the execution of the Stock Purchase Agreement. (Sec. Am. Compl. ¶27.)  Plaintiff has since learned that during the negotiation of the Stock Purchase Agreement, Thomas had been diagnosed with small cell lung cancer. (Id.; Messina Dec., ¶ 6.)  Plaintiff has alleged that as a result of the diagnosis, both Thomas and Richard knew Thomas would never have been able to fulfill his five year commitment under the Consulting Agreement, but omitted that material fact during negotiations with Plaintiff, which contends it never would have consummated the transaction had Thomas's diagnosis been disclosed.

Through the instant motion, Defendants have argued that all essential conduct underlying the Complaint occurred in New York, all relevant and significant witnesses reside in New York, and both the private and the public interests of the parties are best served by transferring the case to New York, where the action could have been brought initially.

Plaintiff's opposition to the motion reveals that the original drafts of the Stock Purchase Agreement required Plaintiff to agree to consent to jurisdiction in New York to resolve any disputes arising between the parties.  (Palladino Decl. ¶ 4; Ex. B, Draft Stock Purchase Agreement, ¶14.10.)  That provision, however, was replaced by the following:

> 14.10 Consent to Jurisdiction. *The Purchaser acknowledges and agrees that all disputes arising out of this Agreement or any promissory note issued pursuant hereto, and all actions to enforce this Agreement or any promissory note issued pursuant hereto, **may** be dealt with and adjudicated in the State Courts of New Jersey or the Federal courts sitting in New Jersey; and hereby expressly and irrevocably submits the Purchaser to the jurisdiction in such courts in any suit, action or proceeding arising out of this Agreement or any promissory note issued pursuant hereto.* So far as is permitted under applicable law, this consent to personal jurisdiction shall be self-operative and no further instrument or action, other than service of process or as otherwise permitted by law, shall be necessary in order to confer jurisdiction upon the Purchaser in any such court.

Palladino Decl. Ex. A (emphasis added).  Accordingly, it is agreed that the Stock Purchase Agreement executed by the parties included a permissive clause authorizing jurisdiction in New Jersey, but not prohibiting litigation elsewhere.

## Discussion

28 U.S.C. § 1404(a) generally provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  A decision to transfer venue should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).  The party seeking transfer bears the burden of establishing that transfer is warranted.  Id.

In this circuit, the plaintiff's choice of venue is of "paramount consideration" and should be disturbed only rarely.  Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).  Indeed, "unless the balance is strongly tipped in favor of transfer, the plaintiff's choice of forum should not be disturbed."  Yocham v. Novartis Pharm Corp., 565 F. Supp. 2d 554, 558 (D.N.J. 2008).  Further, when the plaintiff has chosen its home state as the forum, that decision is "entitled to greater deference."  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981).

In addition, forum selection clauses are presumptively valid and enforceable absent a showing by the resisting party that enforcement of the clause would be unreasonable under the circumstances.  M/S Bremen v. Zapata Offshore Co., 407 U.S. 1, 10 (1972).  In this case, Defendants do not argue that the forum selection clause resulted from overreaching or fraud, nor that enforcement of the clause would be contrary to

public policy or result in litigation in a location that would be so inconvenient as to be unreasonable. See MoneyGram Payment Sys. v. Consorcio Oriental, S.A., 65 F. App'x 844, 846 (3d Cir. 2003). Rather, Defendants rely heavily upon the assertion that the forum selection clause merely constitutes a permissive consent to New Jersey jurisdiction, rather than a mandatory filing requirement. [1]

When the parties have agreed to a valid mandatory forum-selection clause, the "private interest" factors[2] otherwise considered on a motion to transfer will be given no weight because the parties, by contract, have "waiv[ed] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." Stated otherwise, in effect, courts "must deem the private-interest factors to weigh entirely in favor of the preselected forum." Atlantic Marine Const. Co., Inc. v. United States Dist. Ct. for Western Dist. of Texas, 571 US ---, ---, 134 S. Ct. 568, 582, 584 (2013) (enforcement of clause was not defeated merely by fact litigation in a distant forum might hinder party's ability to call certain witnesses and impose other burdens).

Further, because public interest "factors will rarely defeat a transfer motion," mandatory "forum-selection clauses should control except in unusual cases." Id. at 582.

---

[1] See Dawes v. Publish Am. LLLP, 563 F. App'x 117, 118 (3d Cir. 2014) ("A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere, whereas a mandatory clause . . . dictates an exclusive forum for litigation under the contract." (internal quotation omitted)).

[2] "Factors relating to the parties' private interests include: 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" Atlantic Marine, 134 S. Ct. at 581 n.6 (quoting Piper Aircraft, 454 U.S. at 241 n.6).

"Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" Atlantic Marine, 134 S. Ct. at 581 n.6 (quoting Piper Aircraft, 454 U.S. at 241 n.6).

Courts also may consider "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive;" and "the public policies of the fora." Jumara, 55 F.3d at 879-80.

Cognizant of the fact that the forum selection clause in this case is not mandatory, the Court nonetheless finds the policy underlying Atlantic Marine instructive. "When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. . . . In all but the most unusual cases, . . . 'the interest of justice' is served by holding the parties to their bargain." Atlantic Marine, 134 S. Ct. at 583. Further, none of the relevant Section 1404(a) considerations tip the scale sufficiently in favor of transfer. Rather, as discussed during oral argument, the relevant factors are, at best, in equipoise. Finally, the Court notes that, unlike in Atlantic Marine and the majority of post-Atlantic Marine decisions where defendants moved for transfer on forum non conveniens grounds, here both the Plaintiff's choice of forum and the permissive forum selection clause favor the same venue — New Jersey. Accordingly, transfer is unwarranted.

<u>Conclusion</u>

For these reasons, as well as those discussed on the record during oral argument, IT IS ORDERED this 11th day of June, 2015 that the motion of Defendants to transfer the case to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404(a) [Doc. 2] is hereby <u>DENIED</u>.

<u>/s/ Joseph H. Rodriguez</u>
JOSEPH H. RODRIGUEZ
U.S.D.J.